**IT IS ORDERED as set forth below:**



**Date: June 14, 2018**

_____

**W. Homer Drake
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| --- | --- | --- |
| ROBERT LYNCH MOULTRIE, | : | BANKRUPTCY CASE |
| Debtor. | : | 17-11208-WHD |
| _____ | : | |
| OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS, | : | |
| ALLAN LAMPORT, | : | |
| Movants, | : | Contested Matter |
| | : | |
| v. | : | |
| | : | |
| ROBERT LYNCH MOULTRIE, | : | IN PROCEEDINGS UNDER |
| Respondent. | : | CHAPTER 11 OF THE |
| | : | BANKRUPTCY CODE |

**<u>ORDER</u>**

Before the Court is the Official Committee of Unsecured Creditors' (hereinafter the "Committee") and Allan Lamport's, filing *pro se*, Motions To Convert Chapter 11 Case to Chapter 7 (hereinafter the "Motions") filed in the above-

captioned proceeding. Upon proper service and notice to all parties, the matter came before the Court for hearing on May 30, 2018. The Committee's Counsel, Mr. Lamport, United States Trustee, and Debtor's Counsel were present at the hearing. At the conclusion of the hearing, after presentation of arguments by the aforementioned parties, the Court took the matter under advisement.

## Background

The instant Chapter 11 case was filed on June 6, 2017. The Debtor is a non-business individual who owns a majority interest in Facility Design Group (hereinafter "FDG"), where Debtor is employed as the sole, although unlicensed, engineer. FDG has not been profitable for several years. Debtor has not received a regular salary from FDG during this case. However, Debtor has sold the majority of his real property assets to satisfy creditor obligations.

On February 5, 2018, Debtor's Counsel filed a Motion to Withdraw as Attorney of Record. Debtor's Counsel informed the Court that Debtor had participated in an undisclosed post-petition sale of estate property. On April 20, 2017, Debtor and Debtor's wife (the Sellers) jointly entered into a Timber Sales Contract with Cox Land Timber Inc. (the Buyer) allowing Cox to harvest timber from Debtor and Debtor's wife's real property. Subsequent to the commencement

2

of the instant case, Cox harvested the timber and made a payment of over $35,000 to Debtor's wife only. The Debtor did not disclose any of this information in any bankruptcy filings. On February 12, 2018, Debtor, after finding new Counsel, amended his schedules to disclose the Timber Sales Contract and filed a Motion to Assume Executory Contract *Nunc Pro Tunc*, which came before the Court for hearing on March 7, 2018.

At the hearing, it came to light that Debtor's wife, not the Debtor, had signed Debtor's name on the contract. Debtor testified that this was a common practice when Debtor and Debtor's wife's jointly owned property was involved, and that Debtor was aware of the Timber Sales Contract sometime before the harvesting of the timber occurred. Although the proceeds were property of the estate, Debtor's wife turned over only half of the proceeds to the Debtor and retained the rest. At the conclusion of the hearing, the Court issued a ruling from the bench that the Timber Sales Contract, although an undisclosed post-petition sale of property of the estate, would be deemed assumed upon remittance by Debtor's wife of the balance of the sale into the Debtor-in-Possession (hereinafter "DIP") account.

On April 25, 2018, the Committee filed the instant Motion requesting the

Court convert the case from Chapter 11 to Chapter 7.  On April 27, 2018, Allan Lamport, acting *pro se*, also filed a Motion to Convert.[1]  The Movants believe that cause for conversion exists because allowing the case to continue in Chapter 11 will result in continuing loss to the estate.  The only significant asset that can be used to satisfy the claims of creditors is the Debtor's residential property (hereinafter the "Residence"), which Debtor has been trying to sell since 2010.  Movants assert that there is a continuing loss or diminution of the estate because the Debtor resides at the Residence rent and adequate protection payment free, interest on claims secured by the Residence continue to erode equity, and growing administrative expenses will consume the proceeds of the sale.  Movants contend that the above facts, coupled with the Debtor's inability to contribute income to the estate, cause diminution to the estate.  The Movants also believe that there is no reasonable likelihood of rehabilitation due to Debtor's inability to contribute income to the case in that he has not received a regular salary since the filing of this case.

      Additionally, they allege that cause for conversion exists because of the

---

[1] The Committee and Allan Lamport are collectively referred to as "Movants."

4

Debtor's gross mismanagement of the estate.   During prior litigation involving the Debtor's divorce, the Debtor identified property of some value, but such property is not disclosed on the Debtor's schedules.[2]   Also, the Movants assert that Debtor's wife has not turned over the proceeds from the Timber Sale Contract, an assertion that the Debtor does not dispute.

On May 9, 2018, the Debtor filed his Response to the Motions.   The Debtor claims that the value of the Residence is not diminishing because he maintains the Residence by keeping the Residence insured and by expending time and money performing general upkeep of the Residence.[3]   The Debtor believes that the Movants' concern regarding administrative expenses are ill founded since administrative expenses will exist and increase regardless of whether the case is in Chapter 7 or 11.   Further, the Debtor insists that the lack of income is not an issue because he uses social security income to pay certain post-petition expenses, including domestic support obligations and property taxes.   Addressing the likelihood of rehabilitation, the Debtor testified that his business has recently been

---

[2] Debtor, in prior Superior Court proceedings, admitted to owning several items, including: a wine collection and a Cartier watch.   These items are not disclosed on Debtor's schedules.

[3] Debtor testified to performing repairs, such as painting and replacing siding, as well as maintaining the grounds.

5

awarded two contracts that will allow him to receive a salary for possibly the next 6 months. He believes this income will be enough to outweigh any deficiencies in monthly income/expenses that have been disclosed in monthly operating reports. Furthermore, he believes that FDG will acquire additional contractual bids that may result in funds adequate to cure accruing deficiencies.

In response to Movants' allegation of mismanagement of the estate, the Debtor contends that his conduct in turning over half of the proceeds refutes Movants' concerns and is evidence of his good faith in the matter. The Debtor relies on the Court's March 7th ruling allowing assumption of the Timber Sales Contract as evidence that his actions in that matter do not support any allegation of mismanagement of the estate.

Upon consideration of the parties' motions and testimony presented at the hearing, the Court, for the reasons stated below, finds that the Debtor's Chapter 11 case should be converted to Chapter 7.

## Discussion

This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408.

The Court, on request of a party in interest, and after notice and hearing, shall for "cause" convert or dismiss a case, whichever is in the best interest of creditors and the estate.  11 U.S.C. § 1112(b)(1).  The Movants bear the initial burden of proof by a preponderance of the evidence.  *In re Global Emergency Res., LLC*, 563 B.R. 76, 79 (Bankr. N.D. Ga. 2016).  "Cause" is not defined; however, § 1112(b)(4) enumerates sixteen (16) circumstances indicative of "cause."  11 U.S.C. § 1112(b)(4);[4] *In re Star Broad., Inc.,* 336 B.R. 825, 830 (Bankr. N.D. Fla. 2006)("The list is not exhaustive and the Eleventh Circuit has held that 'a debtor's lack of good faith may constitute cause for dismissal of a petition.'").

Movants allege that cause exists under § 1112(b)(4)(A) due to a continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  11 U.S.C. § 1112(b)(4)(A).  "This is a two-fold inquiry.  First, this Court must determine whether there has been substantial or continuing loss to or diminution of the estate.  Second, if the Court finds that there is, then this Court

---

[4] The extreme majority of courts conclude that the list of items that constitute cause is not exclusive and the use of word "and" at the end of § 1112(b)(4)(O) is a scriveners error.  *See In re Products Int'l Co.,* 395 B.R. 101, 110 (Bankr. D. Ariz. 2008).

7

must determine whether there is an absence of a reasonable likelihood of rehabilitation."  *In re Global Emergency Res., LLC*, 563 B.R. at 80 (citing *In re Vallambrosa Holdings, LLC,* 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009).   In order to satisfy the first inquiry, the Movants must show that the Debtor, since the commencement of the case, is operating with declining asset values, or, in the alternative, continues to experience negative cash flow.[5]  *In re Gateway Solutions, Inc.,* 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); *see In re Vallambrosa Holdings, LLC,* 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009) (finding "continuing loss to or diminution of the estate" where debtor ceased business operations, would soon have no equity in its property, and had to pay continuing administrative expenses); *see In re Schriok Const. Inc.,* 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief.")[6]

Here, the Court finds that continuing loss to the estate exists.   The Court is

---

[5] Negative cash flow means that the estate's current liabilities are increasing more rapidly than cash is available to pay as due.   Colliers on Bankruptcy, ¶ 1112-29[i], 16th Ed.

[6] Case law prior to the 2005 amendments is applicable to the analysis of this section.   *See In re Gateway Solutions, Inc.,* 374 B.R. 556 (Bankr. M.D. Pa. 2007).

8

not convinced by Movants' concerns regarding post-petition property taxes and domestic support obligations because the Debtor satisfies these obligations through the use of his social security income.   However, the only significant real asset remaining in the estate is the Residence.   The Debtor has contributed little to no income throughout the life of the case.   Consequently, there is nothing to satisfy estate liabilities except for proceeds from the sale of the Residence.   The Residence has an approximate value of $1,450,000.   If a sale of the Residence were to occur at this point, considering Blue Mountain's claim secured by the Residence (approximately $1,000,000), Real Estate Commissions (approximately $90,000), priority Domestic Support Obligations (approximately $250,000), and Administrative Expenses (approximately $80,000), the proceeds of the sale will net the estate approximately $25,000 to $30,000.   Given the Debtor's lack of contribution to the estate, accumulating administrative expenses and interest on the secured debt will continue to diminish the estate's potential recovery and erode the Residence's value to the estate.

    The Debtor's arguments concerning diminution to the estate are not persuasive.   Although maintaining insurance on the Residence and performing general upkeep may prevent a decrease in the sales price of the Residence, these

9

actions do nothing to increase value, and, when compared to the increasing liabilities, do nothing to prevent diminution to the estate.  Further, the Debtor's potential ability to receive a salary for the next six months does not mitigate this issue because his ability to receive income beyond six months is hypothetical at best.  The Residence has received little attention since the outset of the case due, in part, to its unique nature.  The marketing materials state that the Residence has eight bedrooms and six baths. However, the main residence is only a single bedroom loft with the other bedrooms spread throughout the property in cabins and a partially converted barn.  Also, the Residence contains a family graveyard and is styled in a way the Debtor describes as "unique to his tastes."  Given the uniqueness of the Residence and the lack of interest shown, it is probable the Residence will remain on the market longer than six months.  As a result, this issue is likely to reoccur and the Residence's value to the estate will continue to decrease.

Since the Movants have satisfied the first inquiry, the analysis continues. The second inquiry under § 1112(b)(4)(A) requires showing absence of a reasonable likelihood of rehabilitation.  The focus is whether the Debtor's business prospects justify continuance of the reorganization effort.  This element can be

satisfied by showing a debtor's ability to fund the case is highly uncertain. *See Johnston v. Jem Dev. Co. (In re Johnston),* 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992); *In re Continental Holdings, Inc.,* 170 B.R. 919, 931 (Bankr. N.D. Ohio 1994) (debtor lacked a reasonable likelihood of rehabilitation where debtor lacked reasonably certain source of income.) A debtor's ability to fund a case must be based on actual evidence and must not be speculative. *In re Fort Knox Mini Warehouse, Inc.,* 2002 Bankr. LEXIS 909, 2002 WL 1842452, at *6 (Bankr. N.D. Iowa, July 31, 2002).

Here, there is serious doubt concerning the Debtor's ability to fund the case and a plan, once proposed, to completion. FDG has contracts that will allow the Debtor to receive a salary for six (6) months. However, his ability to fund the case beyond this time is highly speculative. The Debtor offers nothing more than "a feeling" that other contracts will materialize. Also, the Court must take into consideration the financial condition of FDG - the source of the Debtor's salary. The Debtor testified that the reason he has not been receiving a salary is due to FDG's weak financial condition. As shown by Debtor's monthly operating reports, FDG is questionably profitable, if at all, while having up to $2,000,000 in liabilities. If the Debtor were to increase his salary to adequately fund the case, as

11

proposed, he risks being unable to meet FDG's outstanding obligations owed to both employees and creditors. Considering the Debtor's speculative ability to fund the case and the fact the he has taken no action other than to sell real property in satisfaction of his debts, the Court finds no reason that justifies continuance in Chapter 11.

Additionally, the Movants allege that conversion is appropriate due to "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(B). Under the Bankruptcy Code, a DIP is vested with significant powers which come with certain responsibilities and duties. *In re Gateway Access Solutions, Inc.,* 374 B.R. at 565 (a debtor in possession owes a fiduciary duty to its creditors). Mismanagement of the estate may include failure by a debtor to comply with the requirements of the Bankruptcy Code. *See* Colliers on Bankruptcy, ¶ 1112.04[6][b], 16th Ed.; *In re Gateway Access Solutions, Inc.*, 374 B.R. at 566.

Here, the Court finds the Debtor, as DIP, has grossly mismanaged the estate and has not fulfilled the duties owed to creditors and the estate. The Debtor's failure to disclose the Timber Sales Contract until after its occurrence warrants finding "cause" exists for conversion of the case. The Debtor's argument concerning the Court's March 7th ruling is unpersuasive. At the March 7th

12

hearing, the Court ordered that the Timber Sales Contract would be deemed assumed <u>upon the remittance</u> of the sale proceeds retained by Debtor's wife. (<u>emphasis added</u>).   The Debtor's wife has not turned over any proceeds.   As a result, the Timber Sales Contract is not assumed, but is an undisclosed post-petition sale of property of the estate.   Taking this into consideration, Debtor, in the least, has failed to follow an order of this Court,[7]  while, at most, has violated § 363 of the Bankruptcy Code, which prohibits sale of the property of the estate outside the ordinary course of business.   11 U.S.C. § 363(b)(1).[8]   An independent Trustee is needed to pursue recovery of these funds because the Debtor, as DIP, has shown himself either unable or unwilling to do so.

Furthermore, the Court finds the Debtor's failure to disclose and schedule certain assets, coupled with the aforementioned Timber Sales Contract, indicative of the Debtor's gross mismanagement of the estate.   A debtor has a duty to his creditors to be transparent regarding assets that can be used to satisfy, in whole or in part, the debtor's obligations to those creditors during the pendency of a case –

---

[7] Failure to comply with a Court order is cause for conversion pursuant to § 1112(b)(4)(E).
[8] Debtor is an individual, non-business debtor.   Even to the extent the Debtor does conduct business, such business is in the arena of engineering services provided through his company FDG and not through the sale of real property.

13

this Debtor has not fulfilled those duties.  Accordingly, the Court finds cause for conversion exists under § 1112(b)(4)(B).

Since the Movants have established cause, the burden now shifts to the Debtor to show why conversion is not appropriate.  See 11 U.S.C. § 1112(b)(2).  The Debtor must establish all of the elements of § 1112(b)(2).  Specifically, § 1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter <u>if the court finds and specifically identifies unusual circumstances</u> establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor <u>other than under paragraph (4)(A)</u> –
>
>> (i)   for which there exists a reasonable justification for the act or omission; and
>>
>> (ii)  that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (emphasis added).  The word "unusual" contemplates facts

14

that are not common in chapter 11 cases generally, *In re Products Int'l Co.,* 395 B.R. 101,109 (Bankr. D. Ariz. 2008), and the Court has much discretion in making this determination. *In re Orbit Petroleum, Inc.,* 395 B.R. 145, 147 (Bankr. D.N.M. 2008) (citing *In re Franmar Inc.,* 361 B.R. 170, 180 (Bankr. D. Colo. 2006)).

The Court finds no "unusual circumstances" that would prevent conversion. The Debtor believes that there will be greater likelihood that his wife will cooperate by way of Chapter 11 plan instead of with a Chapter 7 Trustee. This argument is unpersuasive. The history of the case is evidence of the fact that Debtor's wife will not cooperate and reinforces the need for an impartial Chapter 7 Trustee.

Further, the Court's finding of cause pursuant to § 1112(b)(4)(A) precludes the Debtor from satisfying § 1112(b)(2)(B). *In re Ria, LLC,* 2010 Bankr. LEXIS 1167, at *4 (Bankr. D.C. April 8, 2010) (stating § 1112(b)(2), by its own terms, is unavailable for the court to decide not to convert when § 1112(b)(4)(A) applies).

In addition, notwithstanding § 1112(b)(4)(A), cause exists under § 1112(b)(4)(B). To satisfy the requirements of § 1112(b)(2)(B)(i), Debtor must show there exists reasonable justification for the "act or omission." 11 U.S.C. § 1112(b)(2)(B)(i). The Debtor offers no justification for his actions regarding the

15

Timber Sales Contract and unscheduled assets, and the Court finds none. As a result, the Debtor cannot satisfy the requirements of § 1112(b)(2)(B)(i). Since the "reasonable justification" requirement of § 1112(b)(2)(B)(i) is not satisfied, there is no need to address § 1112(b)(2)(B)(ii). *See In re Ria, LLC,* 2010 Bankr. LEXIS 1167, at *5 (section 1112(b)(2)(B)(ii) is an additional requirement.)

Since cause exists for conversion and Debtor has not met his burden, the Court must consider what is in the best interest of the creditors and the estate. Given the Debtor's lack of transparency regarding potentially unscheduled assets, as well as to the proceeds from the Timber Sales Contract, the Court finds conversion is necessary to maximize value to the estate, which in turn benefits creditors. A Chapter 7 trustee is needed to collect the assets and make distributions according to the Bankruptcy Code. Conversion to Chapter 7 will streamline the process and will avoid the costly and perilous confirmation process, avoid continual accrual of quarterly fees, and avoid any further Debtor's attorney fees being paid from the Chapter 7 bankruptcy estate. Furthermore, a Chapter 7 trustee will be motivated to pursue any appropriate objections to claims and file appropriate turnover actions. For these reasons, conversion to Chapter 7 is in the best interests of creditors and the estate.

## Conclusion

Accordingly, it is hereby **ORDERED** that the case is **CONVERTED** to Chapter 7; and it is further

**ORDERED** that the Debtor and his officers and agents shall, forthwith, turn over to the Chapter 7 trustee all records and property of the estate in their possession or control and shall immediately turnover any other records or property of the estate which hereinafter comes into their possession or control during the pendency of this case; and it is further

**ORDERED** that the Debtor shall cooperate and assist the Chapter 7 trustee in identifying, assembling, and collecting property of the estate and shall provide the trustee with all documents pertaining to the Debtor businesses and financial affairs as the trustee requests; and it is further

**ORDERED** that, not later than 14 days after entry of this Order, the Debtor shall file a schedule of unpaid debts incurred after the filing of the petition and before conversion of the case, including the name and address of each holder of a claim and serve a copy of the schedule on the Chapter 7 trustee, the United States Trustee, and the persons to whom such debts are owed; and it is further

**ORDERED** that, not later than 28 days after entry of this Order, the Debtor

17

shall file and transmit to the Chapter 7 trustee and the United States Trustee a final report and account regarding the status and disposition of all assets of the estates, including proceeds of assets of the estates; and it is further

**ORDERED** that, not later than 28 days after entry of this Order, the Debtor shall file and transmit to the United States Trustee monthly operating reports for each month or period through the date of conversion for which reports have not already been filed; and it is further

**ORDERED** that, not later than 28 days after entry of this Order, all professionals employed by the Debtor shall file an application for final approval of fees and expenses incurred in or in connection with administration of the case under Chapter 11 or, alternatively, turn over to the appointed Chapter 7 trustee any and all retainers, monies, or other remuneration received from the Debtor prior to or after the filing of the petition for services rendered in or in connection with the Chapter 11 case; and it is further

**ORDERED** that the Clerk will serve this Order on the Debtor, the Debtor's Counsel, the U.S. Trustee, and all creditors and other parties in interest listed on the mailing matrixes.

**END OF DOCUMENT**